```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


TIMOTHY JOHNSTON,                      )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )     No. 4:04CV1075-DJS
                                       )
LARRY CRAWFORD,                        )
DONALD P. ROPER,                       )
JAMES PURKETT, and                     )
UNKNOWN EXECUTIONERS,                  )
                                       )
          Defendants.                  )
```

## ORDER

Plaintiff Timothy Johnston is a Missouri inmate under a sentence of death. His complaint in this matter is brought pursuant to 42 U.S.C. §1983, and alleges that Missouri's current method of lethal injection violates the Eighth Amendment's ban on cruel and unusual punishment because it "can and will subject him to an unnecessary risk of unconstitutional pain and suffering." Complaint [Doc. #1], ¶2, p.1. More specifically, plaintiff alleges that the three-chemical sequence and the method of their use by inadequately trained personnel create an unjustifiable likelihood that during his execution plaintiff will be conscious of the pain of chemically-induced suffocation and heart attack, but incapable

of demonstrating that consciousness due to chemically-induced paralysis.[1]

Defendants Kempker, Roper and Purkett have moved for dismissal, arguing that the Court lacks jurisdiction because plaintiff's claim is not cognizable under §1983 but is instead a successive habeas corpus claim in disguise, for which leave to file has not been granted plaintiff by the Court of Appeals as required by 28 U.S.C. §2244(b)(3).[2] The scope of habeas petitions brought pursuant to 28 U.S.C. §2254 by state prisoners is defined in subsection (a):

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Plaintiff's complaint in this matter does not allege that his conviction was obtained or his death sentence imposed in violation

---

[1] Defendants appear also to construe the complaint as alleging that Missouri's method of execution violates the due process clause. The Court does not so interpret the complaint's references to the Fourteenth Amendment, believing instead that the amendment is cited only for its role in making the prohibitions of the Eighth Amendment applicable to the states as well as the federal government.

[2] Movants also cite §2244(b)(2) and argue that plaintiff has not shown cause for his failure to raise the issue in his prior federal habeas petition. This would be an issue for the Court of Appeals in determining whether or not to grant leave for the filing of a successive habeas petition. If plaintiff's claim is properly characterized as a ground for habeas relief, it would be subject to dismissal for lack of leave to file a successive petition. For these reasons, the §2244(b)(2) argument need not be addressed by this Court.

of federal law. Instead "he seeks a permanent injunction preventing defendants from executing him by the *means currently employed* for carrying out an execution by lethal injection in the State of Missouri." Complaint [Doc. #1], ¶4 at 2 (emphasis added).

In May 2004, the Supreme Court decided <u>Nelson v. Campbell</u>, 541 U.S. 637 (2004). Nelson, a death row inmate in Alabama, brought a §1983 action asserting an Eighth Amendment challenge to the "cut-down" procedure to be used to access his drug-abuse-compromised veins for purposes of his execution by lethal injection. The Supreme Court rejected Alabama's contention that Nelson's claim sounded in habeas, based largely on the Supreme Court's determination that the challenge to the cut-down procedure would not "*necessarily* prevent Alabama from carrying out its execution." <u>Id</u>. at 2125. The court noted that "[m]erely labeling something as part of an execution procedure is insufficient to insulate it from a §1983 attack." <u>Id</u>. at 2123. That state statute did not mandate the challenged procedure, and that Nelson's challenge allowed alternatives to it, factored into the determination that Nelson's claim did not fall within the core of federal habeas corpus. <u>Id</u>. at 2124.

In <u>Reid v. Johnson</u>, 105 Fed.Appx. 500, 2004 WL 1730317 (4th Cir. 2004), decided in August 2004 after <u>Nelson</u>, the Fourth Circuit considered a death row inmate's §1983 action challenging Virginia's method of lethal injection on Eighth Amendment grounds

3

analogous to those asserted here. Reid alleged that Virginia's combination of sodium thiopental or sodium pentothal, pancuronium bromide or Pavulon, and potassium chloride would cause him to consciously suffer an excruciatingly painful and protracted death.[3] The district court had construed the action as presenting a habeas claim and dismissed it for lack of leave to file a successive petition. The Fourth Circuit concluded that, "[i]n light of Nelson,...Reid has stated a cognizable claim under §1983," because Reid challenged Virginia's particular protocol for lethal injection, not lethal injection generally. Id. at 503. The court also noted that, because the protocol appeared to be a matter only of Department of Corrections policy, rather than of state statute or regulation, "Reid's challenge to the protocol does not implicate the validity of his death sentence." Id.

Even more recently, the Supreme Court decided Wilkinson v. Dotson, 125 S.Ct. 1242, 2005 WL 516415 (March 7, 2005), in which it concluded that two state prisoners could bring an action under §1983 to challenge Ohio's state parole procedures as violative of the U.S. Constitution. The Supreme Court found that the claims did not fall within the "implicit habeas exception" because the prisoners did not seek injunctive relief ordering immediate or speedier release and because a judgment in their favor would not

---

[3] The complaint in the case at bar identifies Missouri's lethal injection method as also employing sodium pentothal, pancuronium bromide (Pavulon) and potassium chloride. Complaint [Doc. #1], ¶15 at 5.

4

necessarily imply the invalidity of either their convictions or their sentences.  Id. at 1248.

Guided by these precedents, the Court concludes that plaintiff's claim is properly brought under §1983 and need not be construed as a habeas claim.  The claim does not assert the unconstitutionality of lethal injection as a method of execution generally.  As in Nelson and Reid, the challenged protocol does not appear to be prescribed by state law, and the success of the challenge would not necessarily prevent Missouri from carrying out plaintiff's execution by a different protocol for lethal injection.  As in Dotson, a judgment in plaintiff's favor would not necessarily imply the invalidity of Johnston's conviction or sentence.  Neither would the relief plaintiff seeks bar his execution altogether.

The Court's conclusion is supported by the Nelson, Reid, and Dotson decisions of 2004 and 2005.  The Court is not persuaded that the Eighth Circuit's older decision in Williams v. Hopkins, 130 F.3d 333 (8th Cir. 1997), requires a different result, given the Eighth Circuit's focus there on Williams' challenge to the constitutionality of death by electrocution *in general* and on the last-minute timing of the action.  To the extent the Eighth Circuit there also rejected Williams' challenge to the constitutionality of the particular method by which Nebraska allegedly administered the electrical current, the ruling may not survive Nelson and Dotson.

Second, movants argue that dismissal is appropriate because plaintiff's complaint is "patently without merit." Memo. [Doc. #9], p.10. Movants cite decisions rejecting other types of challenges to lethal injection. These decisions are not controlling and do not support dismissal pursuant to the standard of Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hungate v. United States, 626 F.2d 60, 62 (8th Cir. 1981). Plaintiff's allegations are not frivolous on their face, and if true, are not shown by the distinguishable decisions defendants cite to be incapable of meriting relief. Similarly, defendants' arguments based on the traditional standards for preliminary injunctive relief, and concerning the "equities" of granting an injunction, are unavailing at the motion-to-dismiss stage where the merits of plaintiff's prayer for a permanent injunction are not properly before the Court.

Third, movants argue that plaintiff's §1983 claim is subject to dismissal "because plaintiff failed to allege in his Complaint" that he has exhausted administrative prison remedies as movants contend is required by 42 U.S.C. §1997(e)(a). This represents a misunderstanding of the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). "The PLRA's exhaustion requirement is not a heightened pleading requirement. This circuit

6

considers the PLRA's exhaustion requirement to be an affirmative defense that the defendant has the burden to plead and to prove." Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005), *citing* Wyatt v. Terhune, 315 F.3d 1108, 1117 (9th Cir. 2003) and Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001). Therefore, plaintiff "was under no obligation to plead exhaustion in his complaint." Nerness, 401 F.3d at 876.

Movants have limited their exhaustion argument to the pleading issue rejected above. The argument is summarily made with no recitation, discussion or analysis of plaintiff's actual exhaustion efforts. In response, plaintiff contends that the exhaustion requirement is inapplicable to his claim because the Department of Corrections has itself declared that the issue is not grievable via the available prison administrative process. Plaintiff's contention is predicated on the rejection of his Informal Resolution Request, the first stage of the grievance process, on the stated ground that "[t]his is a non-grievable issue per D5-3.2" of the Department of Corrections Manual. The Court notes that movants fail in their reply memorandum to respond to plaintiff's argument or to otherwise address the issue of exhaustion, and that movants may therefore have abandoned the issue, at least insofar as their motion to dismiss is concerned.

Next, the Court notes that in their reply in support of the motion to dismiss, defendant raise for the first time the

7

argument that plaintiff's claim under §1983 is barred by the statute of limitations. Such an argument is not properly presented in a reply, and the Court declines to address the issue so presented.

Finally, in a supplemental memorandum which movants were granted leave to file and to which plaintiff was invited to respond, movants argue that the named defendants are not proper parties to the action. The substitution of Larry Crawford for Gary Kempker to reflect the change in the Directorship of the Department of Corrections is requested in plaintiff's unopposed motion for substitution, and is proper (indeed, automatic) pursuant to Fed.R.Civ.P. 25(d). Plaintiff's motion will be granted and the substitution formally ordered. As for defendants Roper and Purkett, Superintendents of the Potosi Correctional Center and Eastern Reception, Diagnostic and Correction Center respectively, movants argue that they are not proper parties because, by statute, the Director of the Department of Corrections is responsible for the supervision and direction of executions. Plaintiff responds that the superintendents are properly named as they manage and conduct the operations of the Missouri facilities at which executions have been conducted.

The complaint names each of these defendants "in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief." Complaint [Doc. #1], ¶¶6-8 at 3. The injunction sought would "bar[] defendants from executing

8

Mr. Johnston in the manner by which defendants currently intend to execute him." Id. at ¶25, p.7. The declaration sought would "declar[e] that defendants' current means, methods, practices, procedures, and customs regarding execution by lethal injection violate the Eight and Fourteenth Amendments[.]" Id. at ¶26, pp.7-8. Although the Director of the Department of Corrections may have ultimate authority over the carrying out of executions, movants fail to demonstrate that the named superintendents do not have a significant supervisory role with respect to executions in Missouri.

Defendants rely upon the summary judgment order in Rice v. Kempker, 4:02CV1213-RWS, but that case is not shown to be analogous. Even assuming that declaratory and injunctive relief were there at issue, rather than money damages, the relief sought would have compelled a particular decision admittedly only within the Director's authority. Here, the relief sought is negative, rather than positive, to forbid an occurrence in which any of the three movants might have a supervisory role. The Court is not persuaded by the brief treatment of the issue that an injunction or declaration directed to the superintendents would be "ineffectual," as movants suggest.

For all the foregoing reasons, the motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss of defendants Kempker, Roper and Purkett [Doc. #8] is denied.

**IT IS FURTHER ORDERED** that plaintiff's unopposed motion for substitution of party under Fed.R.Civ.P. 25(d) [Doc. #26] is granted.

**IT IS FURTHER ORDERED** that, as the current Director of the Missouri Department of Corrections, Larry Crawford is substituted in place of Gary B. Kempker as party-defendant. The Clerk shall reflect the substitution on the docket, and the parties shall henceforth reflect the substitution in the caption of the case.

Dated this  13th  day of June, 2005.

                                               /s/ Donald J. Stohr
                                               UNITED STATES DISTRICT JUDGE