## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TIMOTHY JOHNSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04-CV-1075 CAS |
| ) | |
| LARRY CRAWFORD, ) | |
| DONALD P. ROPER, ) | |
| JAMES PURKETT, and ) | |
| UNKNOWN EXECUTIONERS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Timothy Johnston is sentenced to death for the first-degree murder of his wife. On or about August 1, 2005, the State of Missouri scheduled plaintiff's execution by lethal injection for August 31, 2005. On August 16, 2004, at which time plaintiff's execution had not been scheduled, he filed the instant complaint pursuant to 42 U.S.C. §1983 challenging the constitutionality of Missouri's method of lethal injection. More specifically, plaintiff alleges that Missouri's three-chemical lethal injection sequence, using serial administration of sodium pentothal (variously called thiopental sodium), pancuronium bromide (pavulon), and potassium chloride, and the method of these drugs' use by inadequately trained personnel create an unjustifiable likelihood that during his execution he will be conscious of the pain of chemically-induced suffocation and heart attack, but incapable of demonstrating that consciousness due to chemically-induced paralysis, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Now before the Court is plaintiff's motion for temporary restraining order and preliminary injunction, seeking a stay of execution pending the outcome of the merits of the case under the

existing Case Management Order. Also before the Court is defendants' motion for summary judgment. The motions are fully briefed and an evidentiary hearing was held before the undersigned on Friday, August 26, 2005.

The governing constitutional standards are not in dispute. The Eighth Amendment prohibits punishments that are "incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). With respect to executions, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain," as well as methods involving torture or a lingering death. See Gregg v. Georgia, 428 U.S. 153, 173 (1976); In re Kemmler, 136 U.S. 436, 447 (1890). Within the meaning of "cruel and unusual punishment," "['cruel'] implies there is something inhuman or barbarous, something more than the mere extinguishment of human life." Kemmler, 136 U.S. at 447.

Where the State is carrying out an otherwise lawful execution, the resulting death is not itself a prohibited harm: "The 'harm' of [plaintiff's] death flows from [his] crimes and the sentence imposed by the state rather than from the method the state has chosen to execute the sentence." Reid v. Johnson, 333 F.Supp.2d 543, 550 (E.D. Va. 2004). "The cruelty against which the Constitution protects a convicted man is cruelty *inherent in the method of punishment*, not the necessary suffering involved in any method employed to extinguish life humanely." Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464 (1947).

The risk of pain and suffering attributable to the speculative possibility of human error or negligence, as is inherent in any human endeavor, is also "excludable from the calculus of likely harm." Id. (*citing* Campbell v. Wood, 18 F.3d 662, 668 (9th Cir. 1994)); see also Estelle, 429 U.S. at 105. "The Supreme Court has rejected Eighth Amendment challenges based on an 'unforeseeable

accident.'" Beardslee v. Woodford, 395 F.3d 1064, 1075 (9th Cir. 2005) (*citing* Louisiana ex rel. Francis, 329 U.S. at 464).

In determining whether preliminary injunctive relief should be granted, the Court must consider four well-established factors: (1) the threat of irreparable harm to the plaintiff; (2) the balance of harms between the parties as to granting the injunction or not granting the injunction; (3) the probability of plaintiff's success on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 112 (8th Cir. 1991). In the Court's view, the balance of the harms does not militate for or against preliminary injunctive relief. Although plaintiff has a strong interest in the avoidance of an unduly painful death, the State's interest in the timely carrying out of its lawfully-imposed sentence is well-recognized. "In capital cases, the Supreme Court has instructed that '[e]quity must take into consideration the State's strong interest in proceeding with its judgment.'" Beardslee, 395 F.3d at 1068 (*quoting* Gomez v. U.S. Dist. Court, 503 U.S. 653, 654 (1992)). "It is well settled that the state has 'a significant interest in meting out a sentence of death in a timely fashion.'" Reid, 333 F.Supp.2d at 551-52 (*quoting* Nelson v. Campbell, 124 S. Ct. 2117, 2123 (2004)).

The public interest is similarly balanced, in that the public is served both by the avoidance of Eighth Amendment violations in the execution of sentences, but also by the avoidance of undue delay in the execution of sentences. Where "lengthy state and federal proceedings reviewing the conviction and sentence have run their course...the state and the victims of crime can expect the moral judgment of the state to be carried out without delay." Reid, 333 F.Supp.2d at 552.

The threat of irreparable harm and the likelihood of success on the merits are the predominant factors in the Court's stay-of-execution analysis, and are here considered in tandem. Although the

threatened harm alleged by the plaintiff would be irreparable at law for obvious reasons, plaintiff fails to make a clear or persuasive showing as to the threatened harm, either as to the likelihood that it will occur or how severe it would be even assuming a flawed administration of anesthesia. The likelihood that plaintiff can succeed on the merits of his claim is also so low as to require the denial of a temporary restraining order or preliminary injunction.

As to both irreparable harm and likelihood of success, the Court has carefully considered the factual and medical evidence submitted with the parties' briefs and adduced at the evidentiary hearing. Plaintiff's evidence is inadequate to demonstrate that Missouri's execution protocol would subject him to the unnecessary and wanton infliction of pain, torture or a lingering death. Plaintiff's evidence suggests only a possibility, rather than a probability, that he may remain conscious and sensate long enough to experience pain during his execution. For instance, in the affidavit of Dr. Heath submitted in support of the TRO motion, Dr. Heath opines that "the failure to properly administer the sodium pentothal" would create an unjustifiable risk that a prisoner will be conscious during the remainder of the execution. But as previously noted the ever-present possibility of human error or accident is insufficient to establish a constitutional violation. Louisiana ex rel. Francis, 329 U.S. at 464; see also Estelle, 429 U.S. at 105; Beardslee, 395 F.3d at 1075.

Furthermore, plaintiff's evidence does not adequately demonstrate the nature or the duration of the possible pain relative to the likely degree of sedation so as to establish that the quantum of pain would violate Eighth Amendment standards. "Traditional deaths by execution, such as by hanging, have always involved the possibility of pain and terror for the convicted person." Gray v. Lucas, 710 F.3d 1048, 1061 (5th Cir. 1983). The State's evidence indicates that in the last ten executions, the lapse of time between initial injection and time of death ranged from a low of only three minutes to

4

a high of six minutes in only a single instance, with seven of the prisoners dying within three to four minutes. Defendant Crawford's Answers to Plaintiff's First Set of Interrogatories [Doc. #74], #4(g). The record fails to establish any foreseeable probability that the use of the Missouri protocol would result in an execution involving torture or unnecessary pain of unconstitutional magnitude or length.

This is so if plaintiff's evidence is given full persuasive value. When weighed against defendants' strong contrary medical evidence, the likelihood of success is further diminished. Before several other courts, death row inmates and other states have relied on the contrary opinions of the same two experts whose opinions are offered in the instant case, and other courts have noted that plaintiff's expert, Dr. Heath, conceded that the State's expert, Dr. Dershwitz, possessed greater expertise in the critical area of pharmacokinetics and pharmacodynamics, the study of the time course of medications in the body and the effect of medications in the body. See, e.g., Beardslee, 395 F.3d at 1075; Reid, 333 F.Supp.2d at 547, n.7. Moreover, Dr. Heath conceded in Beardslee that if properly administered, the same 5-gram dosage of sodium pentothal "would likely be sufficient to cause unconsciousness and probably death prior to the administration of pancuronium bromide." Beardslee, 395 F.3d at 1075.

Dr. Dershwitz's more persuasive opinions are also more definitive, declaring that "the five gram dose of thiopental sodium (sodium pentothal) would render most people unconscious within a few seconds" and that "[b]y the time all five grams...are injected...over 99.9999999% of the population would be unconscious" and would "stop breathing within a minute of drug administration." Dershwitz Affidavit [Doc. #59.2], ¶8. By contrast, Dr. Heath opines in his affidavit only that *if the thiopental is incorrectly administered*, there is a "reasonable likelihood that [a

5

prisoner] will be rendered unconscious for a period of time as short as a few seconds." Heath Affidavit [Doc. #66.1], ¶23. As in Reid:

> There is simply no reason to believe the speculative list of horribles described by [plaintiff] are likely to come to pass. The record establishes that the defendants have taken reasonable measures to eliminate the possibility of human error and to ensure the condemned will experience nothing other than insertion of an intravenous catheter followed by unconsciousness and death. In sum, the likelihood of [plaintiff] suffering irreparable harm from the manner in which the defendants intend to carry out his sentence is so remote as to be nonexistent. [Plaintiff's] failure to show any likelihood of irreparable harm precludes him from obtaining preliminary injunctive relief.

333 F.Supp.2d at 551. Similarly here, on the record before this Court, plaintiff's showing as to irreparable harm does not support preliminary injunctive relief. Neither does plaintiff demonstrate the likelihood of success necessary to the granting of a preliminary injunction staying his execution.

The TRO motion briefly addresses claims that Missouri's protocol does not provide for monitoring of the IV site or monitoring of the level of anesthesia such as by use of an EKG and blood pressure monitoring, no right to relief is shown. Defendants' evidence is that the execution will involve continuous monitoring of plaintiff's pulse and heartbeat by a Pulse Oximeter and continuous electrocardiograph (EKG). First Supplemental Answers to Plaintiff's First Set of Interrogatories [Doc. #75], #3(e); Crawford Affidavit [Doc. #59.1], ¶6. Furthermore, lack of monitoring itself causes no harm, but is harmful only tangentially and in proportion to pain or problems which may otherwise arise and go undetected for lack of monitoring. Finally, defendants' expert offers the opinion that the five grams of thiopental sodium administered first is such a "significant overdose" that it will "produce unconsciousness in more than 99.99999999% of the population and removes the need for such monitoring." Dershwitz Declaration [Doc. #70.7], ¶8. Plaintiff's speculative argument therefore fails to demonstrate either a threat of irreparable harm flowing from these causes, or a

likelihood of success in showing that the lack of monitoring is itself a violation of the Eighth Amendment prohibition on cruel and unusual punishment.

The same is true of plaintiff's arguments concerning the qualifications of the doctor and nurse who will prepare the drugs used in the execution. Their qualifications and expertise, even if substandard, are not shown to directly create any appreciable risk of irreparable harm or an execution procedure that violates constitutional norms. Furthermore, the parties' evidence on the issue creates no genuine dispute of material fact. Plaintiff's expert opines only that *if the doctor and nurse make mistakes*, plaintiff may suffer. Heath Affidavit [Doc. #66.1], ¶50. Again, such an argument cannot carry the day under the constitutional jurisprudence of Louisiana ex rel. Francis, 329 U.S. at 464, Estelle, 429 U.S. at 105, and Beardslee, 395 F.3d at 1075. Dr. Heath offers no opinion concerning the qualifications of the particular doctor and nurse who will oversee the preparation of the drugs. By contrast, the State's expert has reviewed these individuals' qualifications[1] and opines to a reasonable degree of medical certainty that they "are competent to prepare the drugs properly, to insert the intravenous catheter into the femoral vein, and to...oversee corrections personnel regarding other aspects of the lethal injection process." Dershwitz Declaration [Doc. #70.7], ¶7.

In the TRO motion, plaintiff argues an additional theory for relief, based on allegations concerning the potential pain of the surgical insertion into the femoral vein of the triple lumen catheter for administering the drugs used in lethal injection. Even by the lenient standards of federal notice

---

[1] These are set forth in defendant Crawford's Answers to Plaintiff's First Set of Interrogatories [Doc. #74] and First Supplemental Answers to Plaintiff's First Set of Interrogatories [Doc. #75]. Crawford states that the only drug that requires mixing is the thiopental sodium, that the doctor has mixed drugs 30,000 to 40,000 times in his career and that particular drug approximately 1,000 times, and has placed an IV in central lines 20,000 to 30,000 times. See Supplemental Answer #3 [Doc. #75], p.3.

7

pleading, this claim is not pled in the complaint and is not properly asserted for the first time in the motion for a TRO.[2] Furthermore, even accepting as true plaintiff's characterization of the potential pain of the catheterization, the Court finds as a matter of law that no constitutional violation is shown under the applicable Eighth Amendment standards, both because of the mere possibility rather than any probability of the infliction of such pain, and because the possibility is dependent upon mistakes in the procedure involving accidental punctures and other complications not reasonably foreseeable and not constitutionally relevant. Finally, the doctor scheduled to perform the procedure at plaintiff's execution is a board-certified surgeon, and within the categories of specialists that even plaintiff's expert identifies as trained in the procedure. First Supplemental Answers to Plaintiff's First Set of Interrogatories [Doc. #75], #3(e); (1st) Groner Affidavit [Doc. #66.3], ¶15; (2nd) Groner Affidavit [Doc. #81.1], ¶12.

Plaintiff's motion for temporary restraining order or preliminary injunction staying his execution will therefore be denied. Although based on the evidence adduced in the instant case rather than the precedent of other courts, this conclusion is similar to that of the Ninth Circuit in Beardslee, the Sixth Circuit in In re Lewis Williams, Jr., 359 F.3d 811 (6th Cir. 2004), and the district court and the Ninth Circuit in Cooper v. Rimmer, 379 F.3d 1029, 1031 (9th Cir. 2004); No. C 04 436 JF, 2004 WL 231325 at *4 (N.D. Cal. 2004), which found that the plaintiff had "done no more than raise the possibility that California's lethal-injection protocol risks an unconstitutional level of pain and suffering." Other courts have also noted that twenty-seven states use the three-drug protocol

---

[2]In ruling on plaintiff's motion to compel, Judge Stohr previously declined to compel responses to interrogatories directed to the existence of a "cut-down" procedure for inserting the intravenous line for lethal injection, finding that "issues involving such a procedure are not pled in the complaint." Order of June 23, 2005 [Doc. #37], p.2.

employed by Missouri, and further than no court has held that the method violates the Eighth Amendment. See Beardslee, 395 F.3d at 1074; Cooper, 2004 WL 231325 at *3.

To defendants' motion for summary judgment, a different legal rubric applies. In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the movant to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2739 (1983). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The Supreme Court has indicated that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327 (*quoting* Fed.R.Civ.P. 1).

At first blush, the contrary opinions of the parties' medical experts might appear to present disputes of fact which preclude summary judgment. Upon more careful consideration, however, the Court concludes that summary judgment is appropriately granted because, as discussed in detail above with respect to the TRO motion, plaintiff's proof, even if accepted as true and accurate, is insufficient to establish that the Eighth Amendment will be violated by Missouri's lethal injection

9

protocol. Both qualitatively and quantitatively, the opinions of plaintiff's expert are inadequate to rationally support a conclusion that his execution as planned carries an unconstitutional risk of the unnecessary and wanton infliction of pain sufficient to violate standards of decency in the context of the purposeful and lawful extinguishment of his life.

Plaintiff's assertions concerning alternative lethal injection protocols raise matters of public policy not properly considered by the Court. As the district court noted in Reid: "It is not this Court's function to suggest more humane or medically acceptable execution protocol, but to determine whether the method adopted by the [State] is constitutionally sound." Reid, 333 F.Supp.2d at 548. The Court will therefore grant defendants' motion for summary judgment, finding as a matter of law that plaintiff fails to establish the Eighth Amendment violation upon which his complaint is based. Summary judgment being granted on that basis, the Court need not and does not address the statute of limitations issue raised by defendants in support of their motion.

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion for temporary restraining order and preliminary injunction [Doc. #65] is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [Doc. #58] is granted.

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  26th  day of August, 2005.